IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


TRAVIS McKINNEY,

     **Plaintiff,**

vs.                                                    Case No. 4:09cv444-RH/WCS

DAVID HARVEY,
and JASON NEWLIN,

     **Defendants.**

_____/


## THIRD REPORT AND RECOMMENDATION

Plaintiff, a *pro se* inmate, initiated this § 1983 civil rights case in November, 2009,

against three Defendants.  Doc. 1.  Subsequently, Defendant Sauls was dismissed from

this case, docs. 16, 18 (the first report and recommendation), and service of the second

amended complaint, doc. 10, was directed.  After a period of discovery, doc. 36,

Defendants filed a motion for summary judgment.  Doc. 44.  The *pro se* Plaintiff filed a

motion for leave to file a third amended complaint, doc. 47, which was denied.  Docs.49,

53 (the second report and recommendation).  Plaintiff was directed to respond to the

summary judgment motion, doc. 55, and advised of his burden under Rule 56 and N.D.

Fla. Loc. R. 56.1.  Plaintiff has filed his response, doc. 58, and has simultaneously filed

a notice of voluntarily dismissal, doc. 57, as to his claim against Defendant Newlin.

Under Rule 41(a)(2), the claim against Defendant Newlin should be dismissed as this

Defendant provided evidence within the summary judgment motion that Plaintiff was

mistaken as to his identity and Defendant Newlin was in California at the time of the

alleged incident.  Doc. 44, Ex. E.  Plaintiff's notice of voluntary dismissal should be

accepted and Defendant Newlin dismissed from this action.  The motion for summary

judgment is limited to Plaintiff's claim against Defendant David Harvey..

**Allegations of the second amended complaint, doc. 10**

Plaintiff alleged that on October 15, 2008, he was in the Wakulla County

courthouse for a violation of probation hearing before Judge Sauls.  *Id.*, at 5.  Judge

Sauls ordered that Plaintiff be gagged during the hearing.  *Id.*  Defendant Harvey

"witnessed as Deputy Jason Newlin, removed a used 'snot rag' from his person and

stuffed it into the mouth of" Plaintiff.  *Id.*  Plaintiff alleged Deputy Newlin "assisted the

bailiffs in gagging" Plaintiff and he complains he was exposed to "expelled body fluids,

germs and mucus."  *Id.*  Plaintiff claimed his right to cruel and unusual punishment was

violated when Defendant Harvey failed to take action to prevent Deputy Newlin from

placing "a used 'snot rag' into" Plaintiff's mouth.  *Id.*, at 6.  As relief, Plaintiff seeks one

million, five hundred thousand dollars.  *Id.*, at 7.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, defendant initially has the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d

265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with

evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An

issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v.

Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the

material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of

evidence is insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting*

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202

(1986).  All reasonable inferences must be resolved in the light most favorable to the

nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if

there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677

(2009).  "Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial

Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano,

129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v.

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The

nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477

U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Plaintiff was arrested and charged with violating the terms of his probation on

May 23, 2008.  Doc. 44, ex. A (doc. 44-1).  Plaintiff's violation of probation hearing and

sentencing was held on October 15, 2008, at the Wakulla County Courthouse.  Doc. 44,

ex. B (doc. 44-2).  Plaintiff was complaining that his lawyer was not providing effective

representation and that he wanted to call witnesses to testify on his behalf.  Doc. 58, pp.

13-15.  The transcript reflects that Plaintiff was interrupting Judge Sauls and began

arguing with him when Judge Sauls ruled that Plaintiff had "no legitimate reason" to be

upset with his attorney because it was not appropriate to present character witnesses at

a violation of probation hearing.  *Id.*, at 13.  Plaintiff became disruptive during the

hearing and refused to "hush and listen."  Doc. 44, ex. B (doc. 44-2, p. 13-14) (transcript

page numbering).  Judge Sauls warned Plaintiff that he would be gagged if he did not

hush and listen.  *Id.*, at 11.  Plaintiff answered, "Why should I have to listen?  What's

going on?"  *Id.*  Plaintiff continue to rant that gagging him was "racist" and challenging

their actions in saying, "Man, what you all trying to do?"  "What you all - - . . . going to

beat me up in here, because I don't want this lawyer?  What you all - - what you all

fixing to do?  What you all trying to do to me?  You all fixing to jump on me, because I

don't want a lawyer?"  *Id.*  Judge Sauls simply responded, "I want him gagged."  *Id.*, at

11.  Even after directing that Plaintiff be gagged, Plaintiff continued to rant about his lawyer and that it was not fair.  Doc. 58, p. 15.

Plaintiff stated in his deposition that Deputy Powell placed a piece of red tape over Plaintiff's mouth.  Ex. C (doc. 44-3, p. 4).  Due to the way Plaintiff was handcuffed, however, he was able to reach up and pull the tape off his mouth.  *Id.*  At that point, Judge Sauls called a recess so materials could be located to gag Plaintiff and he was taken out of the courtroom and put in a "little, small room in the back of the courthouse." Ex. C (doc. 44-3, p. 5); Ex. B (doc. 44-2, p. 14).  Plaintiff's mouth was taped with duct tape and then he was brought back into the courtroom and Judge Sauls continued the hearing.  Ex. C (doc. 44-3, p. 6).

When the hearing resumed, Judge Sauls first informed Plaintiff that there were three "constitutionally permissible ways to deal with an unruly defendant" and then named each option.  Ex. B (doc. 44-2, p. 17).  Judge Sauls stated that "the defendant in this instance has necessitated his being bound and gagged in order to proceed" and then he proceeded to question Plaintiff on whether he wished to proceed with counsel or not.  *Id.*, at 17-18.  Plaintiff responded that he did not want his current lawyer, and continued to argue that he did not want to represent himself and wanted a new lawyer. *Id.*, at 17-19.  Judge Sauls advised Plaintiff that if he insisted on representing himself, he would not be entitled to a continuance, he would not receive any special treatment, and he could not claim ineffective assistance of counsel on appeal.  *Id.*, at 18-19. Plaintiff stated that he did not want to represent himself, but he wanted to hire his own private attorney. *Id.*, at 19.  Judge Sauls advised Plaintiff that he had the prior five months to have done that and once again attempted to advise Plaintiff that he was not

receiving effective assistance of counsel and that he did not have a right to another appointed attorney.  *Id.*, at 19-21.  Plaintiff, however, continued to insist on having another attorney and was not listening to Judge Sauls.  *Id.*

After this interaction with Judge Sauls, Plaintiff's mouth was taped again with the duct tape.  Ex. C (doc. 44-3, p. 26) (page numbering of deposition transcript).  However, Plaintiff resumed his disruptive behavior and pulled the tape off again.  Ex. C (doc. 44-3, pp. 27- 29).  Judge Sauls again ordered that Plaintiff be gagged.  *Id.*, at 27.  Three officers assisted in duct taping his mouth again.  *Id.*, at 27.  Once again, however, Plaintiff was able to reach up and pull the tape off his mouth to interrupt Judge Sauls and complain about being gagged.  *Id.*, at 27.

At that point, the deputy who Plaintiff believed to be Deputy Newlin[1] reached in his back pocket and "pulled out a snot rag or a handkerchief and stuffed it" in Plaintiff's mouth and then again duct taped Plaintiff's mouth closed.  Ex. C (doc. 44-3, pp. 27-29).  Plaintiff said the tape went around the back of his "head and everything."  *Id.*, at 28.

Defendant Harvey was in the courtroom during Plaintiff's probation hearing, and Plaintiff testified in his deposition that he "sat there the whole while and just watched because all these are his officers.  They work for him, they on duty.  He watched them do all this here.  And I asked him is he going to let them do this, and he allowed them to do it."  *Id.*, at 37; *see also* Ex. D.

Defendant Harvey provided an affidavit in which he stated that he "did not participate in gagging the Plaintiff, nor did [he] witness the Plaintiff being gagged outside

---

[1] Deputy Newlin was in Palm Springs, California on October 15, 2008, participating in a softball tournament.  Ex. E ¶ 6.

of the courtroom." Ex. D (doc. 44-4, p. 2). Defendant Harvey averred that the "duct tape gag remained on Plaintiff's mouth during the proceeding and was removed only when the Plaintiff was required to respond to the judge." *Id.* "Eventually, the Plaintiff calmed down, and the [gag] was removed altogether." *Id.* The hearing proceeded and Plaintiff was sentenced to 15 years each on counts 1, 2, and 3, to run consecutively. Ex. C (doc. 44-3, p. 64).

Defendant Harvey has been Sheriff of Wakulla County for 35 years. Ex. D (doc. 44-4). In that time, "there have been no incidents, complaints, or allegations during [his] tenure as Sheriff of Wakulla County, Florida, in which any citizen, whether a pretrial detainee or inmate incarcerated at the Wakulla County Jail or otherwise, was gagged by a Wakulla County deputy sheriff pursuant to a judge's order or otherwise." *Id.*, at 2-3. Defendant Harvey had no reason to "know or believe" that on October 15, 2008, "there was any unofficial policy or widespread custom or practice of gagging citizens of Wakulla County, Florida or of utilizing excessive force against the citizens of Wakulla County, Florida." *Id.*, at 3. Defendant Harvey stated that he had no personal knowledge that a need existed for corrective action to be taken concerning the use of force by any deputy sheriff. *Id.*

Plaintiff submitted his own statement, sworn under penalty of perjury, that when he was taken out of "the courtroom into a witness room where" deputies duct taped his mouth, he asserts that "Defendant David Harvey watch[ed] as his officers and bailiff did this without taken [sic] corrective actions." Doc. 58, p. 2. When Plaintiff returned to the courtroom after having duct tape placed on his mouth, Plaintiff acknowledges he was "able to remove the duct tape" and speak. *Id.* At that time, "officer John Doe reach[ed]

into his pocket and removed a handkerchief then stuff[ed] it into [Plaintiff's] mouth" and the re-applied the duct tape over Plaintiff's mouth. *Id.* Several officers and a bailiff held Plaintiff to his chair. *Id.* Defendant Harvey watched as that took place. *Id.*

Plaintiff said he advised the officers that he could not breathe and a John Doe Officer told Plaintiff, "if you can talk you can breath [sic]." *Id.*; *see also* Ex. C, p. 29 (doc. 44-3, p. 10). Plaintiff testified in his deposition that he was again able to reach up and pull the tape off and the handkerchief and he decided to be quiet. Ex. C, pp. 29-30 (doc. 44-4, pp. 10-11). Plaintiff said that he finally "realized that [he] can't win so the best thing I can do is just try to get this stuff off my mouth and just sit here and just be quiet." Ex. C, p. 29 (doc. 44-4, p. 10). Plaintiff was able to pull the handkerchief out of his mouth. Ex. C, p. 30 (doc. 44-4, p. 11).

In the process of being gagged with the handkerchief and duct tape, Plaintiff said he had bleeding gums "while having to endure the pain and angony [sic] of losing all facial and head hair from the removal of the duct tape over an over." Doc. 58, p. 3. Plaintiff says he "almost died from lack of air do [sic] to not being able to breath [sic] while being expose [sic] to mucus and snot from Officer John Doe [sic] snot rag." *Id.*

**Analysis**

The summary judgment motion is limited to the claim against Sheriff Harvey for failing to take any action when deputies gagged Plaintiff. Plaintiff claimed that his Eighth Amendment right to be free from cruel and unusual punishment was violated during the court hearing. However, because Plaintiff was a pretrial detainee at the time

of the V.O.P. hearing, this claim is grounded in the Fourteenth Amendment.[2]  Bozeman

v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005), *cited in* Fennell v. Gilstrap, 559 F.3d

1212, 1216, n.5 (11th Cir. 2009).  Nevertheless, a "claim of excessive force under the

Fourteenth Amendment is analyzed as if it were an excessive-force claim under the

Eighth Amendment."  Fennell, 559 F.3d at 1216, n.5.

Because the claim against Defendant Harvey is not for acting pursuant to the

directive of Judge Sauls, the doctrine of quasi-judicial immunity is not applicable.[3]  Doc.

44, pp.9-14.  Defendant Harvey allegedly simply took no action to intervene as others

carried out the order to gag Plaintiff.

Defendant also argues that his conduct does not rise to the level of a

constitutional violation.  *Id.*, at 12.  Defendant states that gagging Plaintiff during the

---

[2]  If the excessive force claim arises in the course of making an arrest, the Fourth Amendment governs.  If the claim arises out of events occurring while plaintiff is a pretrial detainee, the Fourteenth Amendment governs.  Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1279 n.11 (11th Cir. 2004).  Such a claim brought by a prisoner is governed by the Eighth Amendment.  Johnson v. Breeden, 280 F.3d 1308, 1321-22 (11th Cir. 2002); Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005).

[3] Even if it were applicable to the claim against Defendant Harvey, it does not necessarily mandate judgment in favor of the Defendant.  *See* Martin v. Board of County Commissioners, 909 F.2d 402, 405 (10th Cir.1990) (holding that absolute immunity did not apply to officers who used excessive force to execute a bench warrant and judicial order does not shield officers from claims challenging the manner in which they enforce the order); Richman v. Sheahan, 270 F.3d 430, 436 (7th Cir. 2001) (holding that deputies who restrained man at the order of a judge were not protected by absolute quasi-judicial immunity from § 1983 action challenging unreasonable use of force when carrying out that order).  *But see* Martin v. Hendren, 127 F.3d 720 (8th Cir. 1997) (holding that alleged impropriety in use of excessive force to did not strip the acts of their quasi-judicial character).  The question is not simply whether the conduct challenged is the judge's decision, but the separate question which considers the manner in which that decision was enforced or carried out.  Richman, 270 F.3d at 436 .

hearing "was necessary to restore order and decorum to the courtroom."  *Id.*  Moreover,

Defendant contends Plaintiff alleged no injury.  *Id.*, at 14.

The use of a gag on a defendant in court is not *per se* unconstitutional.  The

United States Supreme Court has given this instruction to the judiciary in maintaining

order in the courts when confronted with disruptive behavior:

> It is essential to the proper administration of criminal justice that dignity,
> order, and decorum be the hallmarks of all court proceedings in our
> country.  The flagrant disregard in the courtroom of elementary standards
> of proper conduct should not and cannot be tolerated.  We believe trial
> judges confronted with disruptive, contumacious, stubbornly defiant
> defendants must be given sufficient discretion to meet the circumstances
> of each case.  No one formula for maintaining the appropriate courtroom
> atmosphere will be best in all situations.  We think there are at least three
> constitutionally permissible ways for a trial judge to handle an
> obstreperous defendant like Allen: (1) bind and gag him, thereby keeping
> him present; (2) cite him for contempt; (3) take him out of the courtroom
> until he promises to conduct himself properly.

Illinois v. Allen, 397 U.S. 337, 343-344, 90 S.Ct. 1057, 1061 (1970); *see also* Hall v.

Boothe, 47 F.3d 424 (5th Cir. 1995) (approving dismissal of case on judicial immunity

grounds where judge ordered defendant be "bound and gagged with duct tape" to

"secure dignity and decorum in his courtroom").  It is permissible to bind and gag a

defendant who refuses to stop disruptive behavior when directed to do so by a judge.

The question is whether it was also permissible to pull duct tape off and on

several times and then stuff a handkerchief in Plaintiff's mouth.  The evidence here

reveals that Plaintiff continued to make outbursts in the courtroom after Judge Sauls

directed him to be quiet.  Judge Sauls ordered that Plaintiff be gagged, but that did not

deter Plaintiff either.  Plaintiff continued to take the tape off himself and inject his

comments into the proceedings, interrupting the hearing.  Even viewing these facts in

the light most favorable to Plaintiff, his own actions in removing the tape minimizes any harm that Plaintiff suffered when the deputies also removed the tape for him to speak. Had it been painful and inflicted actual injury, Plaintiff would not have done it more than once.

An excessive use of force claim must, at its essence, involve some type of force that crosses the line between reasonable and excessive.  Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002) (evaluating an excess use of force claim must consider the need for force and the amount used).  The Eleventh Circuit has held "that the application of de minimis force, without more, will not support a claim for excessive force . . . "  Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).  The use of the duct tape was de minimis and the fact that it may have been taken off and on numerous times does not make it excessive.  The additional use of the handkerchief provided more discomfort to Plaintiff, obviously, but was made necessary due to Plaintiff's continued disruptive behavior.  That additional level of discomfort provided Plaintiff with the incentive to calm down and be quiet, and the handkerchief was pulled out by Plaintiff and the tape removed.

When viewed in the light most favorable to Plaintiff, stuffing a previously used handkerchief in Plaintiff's mouth is certainly offensive, perhaps even disgusting, but it is not excessive force.  Accepting that Defendant Harvey observed all of the actions of the deputies or bailiffs, a point disputed by Defendant,[4] these events do not cross the

---

[4] Defendant averred that he did not observe anyone stuff a handkerchief in Plaintiff's mouth, nor was he present when Plaintiff was gagged outside of the courtroom.  Ex. D.  Plaintiff disputes both facts.  Doc. 58, p. 2.  This dispute of fact, however, is immaterial.

constitutional threshold.  Plaintiff's only injury was minor and trivial as he claims little more than bleeding gums and having hair pulled.  That is insufficient to support a claim for excessive force.  Defendant Harvey cannot be at fault for not taking action to intervene when this conduct does not offend the Constitution.

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's notice of voluntarily dismissal, doc. 57, be **ACCEPTED** and Defendant Newlin be **DISMISSED** under FED. R. CIV. P. 41(a)(2), and that Defendant Harvey's motion for summary judgment, doc. 44, be **GRANTED** and judgment entered in his favor.

**IN CHAMBERS** at Tallahassee, Florida, on August 4, 2011.


 S/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**